Filed 9/22/21  P. v. Mendoza CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ARTURO MENDOZA,<br><br>    Defendant and Appellant. | H047430<br>(Santa Clara County<br>Super. Ct. No. 159891) |

## I.    INTRODUCTION

In 1993, a jury convicted defendant Arturo Mendoza of first degree murder (Pen. Code, § 187),[1] attempted robbery (§§ 664/211, 212.5, subd. (a)), and first degree burglary (§§ 459, 460, subd. (a)), finding true the felony-murder special circumstance allegations that the murder was committed during an attempted robbery and a burglary (§ 190.2, subd. (a)(17)(i), (vii))[2] and the allegation that defendant personally used a firearm during the commission of the offenses (§ 12022.5, subd. (a)).  It was undisputed that defendant was not the actual killer; defendant was prosecuted as an aider and abettor to the murder.  In finding the felony-murder special circumstance allegations true, the jury determined that defendant was a major participant in the underlying felonies who

---

[1] All further statutory references are to the Penal Code.

[2] Currently section 190.2, subdivision (a)(17)(A), (G).

acted with reckless indifference to human life. The superior court sentenced defendant to life without the possibility of parole consecutive to four years for the firearm enhancement. This court affirmed the judgment in 1995.

In 2019, defendant filed a petition for resentencing pursuant to section 1170.95, which was enacted by the Legislature through its passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437). (Stats. 2018, ch. 1015, § 4.) Section 1170.95 allows individuals convicted of felony murder or murder under the natural and probable consequences doctrine to petition the superior court to vacate the conviction under recent changes to the law that limited the scope of the felony murder rule to individuals who were major participants in the underlying felony who acted with reckless indifference to human life and eliminated the natural and probable consequences theory of liability for murder. After briefing and argument by the parties, the superior court denied the petition, determining that the jury's special circumstance findings barred entitlement to relief. The court also found that Senate Bill 1437 was unconstitutional because it unlawfully amended Propositions 7 and 115.

Defendant contends that the felony-murder special circumstance findings do not render him ineligible for section 1170.95 relief because the findings were made before the California Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), which construed the felony-murder special circumstance statute. Defendant also argues that Senate Bill 1437 is constitutional. The Attorney General contends that the trial court properly denied the petition based on the special circumstance findings. The Attorney General argues that defendant must first challenge the special circumstance findings under *Banks* and *Clark* in a petition for writ of habeas corpus and, if successful, petition for resentencing under section 1170.95. The Attorney General concedes that Senate Bill 1437 is constitutional.

The Courts of Appeal, including this one, have held that Senate Bill 1437 is constitutional and we concur with those decisions. (See, e.g., *People v. Lamoureux*

2

(2019) 42 Cal.App.5th 241; *People v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270; *People v. Cruz* (2020) 46 Cal.App.5th 740; *People v. Bucio* (2020) 48 Cal.App.5th 300; *People v. Johns* (2020) 50 Cal.App.5th 46; *People v. Alaybue* (2020) 51 Cal.App.5th 207.)  Because the Attorney General concedes the constitutionality of Senate Bill 1437, we do not address the issue further here.

The courts are divided, however, on whether a pre-*Banks* and *Clark* felony-murder special circumstance finding prevents a defendant from demonstrating prima facie entitlement to section 1170.95 relief (see *People v. Pineda* (2021) 66 Cal.App.5th 792, 799-801 (*Pineda*) [detailing the split]), and the issue is currently pending before the California Supreme Court (see *People v. Strong* (Dec. 18, 2020, C091162) __ Cal.App.5th __ [2020 Cal.App.Unpub.LEXIS 8505], review granted Mar. 10, 2021, S266606).  In *Pineda*, we followed the First District's determination in *People v. Secrease* (2021) 63 Cal.App.5th 231, 255 (*Secrease*) that when a defendant convicted of murder with a felony-murder special circumstance finding " 'has never been afforded a *Banks* and *Clark* sufficiency-of-the-evidence review—by any court, at the trial or appellate level—section 1170.95 courts have an obligation to undertake such an analysis at the prima facie entitlement-to-relief stage of a resentencing proceeding under subdivision (c) of the statute.' " (*Pineda*, *supra*, at p. 801.)

For reasons that we will explain, we determine that defendant has never had a judicial determination under *Clark* of whether sufficient evidence supports the jury's felony-murder special circumstance findings that defendant acted with reckless indifference to human life.  Accordingly, we reverse the superior court's order denying defendant's section 1170.95 petition and remand the matter for that determination.[3]

---

[3] Defendant's counsel has filed a petition for writ of habeas corpus that this court ordered to be considered with this appeal.  We have disposed of the habeas petition by separate order filed this day.  (See Cal. Rules of Court, rule 8.387(b)(2)(B).)

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Factual Background*[4]

On January 3, 1992, defendant, codefendant Jesus Antonio Mandujano, and a man named "Arellano" forced their way into Sacramento Benitez's home, where he lived with several family members, while one or more individuals waited outside. All three intruders had handguns. Benitez ran into his bedroom, with Mandujano and perhaps Arellano in pursuit, and attempted to close the door. Mandujano fired one shot through the bedroom door, killing Benitez. The three intruders fled.

Defendant and three others had planned to commit a robbery at Benitez's home. Defendant and his cohorts had gone to the house on an earlier occasion to determine whether it was the right home and how many people were there. Defendant had asked for directions and a glass of water.

When they returned to the home, defendant actively helped Mandujano push the front door open while Benitez's sister resisted. Defendant then stood inside the door, inferably using his pistol in an attempt to neutralize Benitez's sister, while Mandujano pursued Benitez down the hallway.

Benitez's sister testified that after defendant entered the home, "he stayed over to his side by the doorway." At some point she saw that defendant was pointing "something white" at her ribcage, "but [she] never knew what it was." Sister explained that "ever since that other man was there down there with my brother I had all my attention in that direction and I wasn't paying attention to this other." On cross-examination, sister stated that she "couldn't say if it was a gun or a knife" that Mendoza held in his hand.

---

[4] The facts are based on this court's opinion affirming the judgment in case No. H012250. The opinion was an exhibit to the district attorney's opposition to defendant's section 1170.95 petition.

4

Defendant testified that a man named "Jicamo" had given him a gun, and that he had the gun with him when he entered the home the second time.[5]

### B. *Procedural History*

#### 1. Trial Proceedings

Defendant was charged with first degree murder (§ 187) with felony-murder special circumstance allegations that the murder was committed during an attempted robbery and a burglary (§ 190.2, subd. (a)(17)(i), (vii)). Defendant was also charged with attempted robbery (§§ 664/211, 212.5, subd. (a)) and first degree burglary (§§ 459, 460, subd. (a)), and it was alleged that defendant personally used a firearm during the commission of the offenses (§ 12022.5, subd. (a)).

Defendant was tried in 1993. As relevant here, the jury was instructed on aider and abettor liability with CALJIC No. 8.27 for first degree felony murder and with CALJIC No. 3.02 on the natural and probable consequences doctrine. Regarding the felony-murder special circumstance allegations, the jury was instructed, "If you find that a defendant was not the actual killer of a human being, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with reckless indifference to human life and as a major participant, aided, abetted, or assisted in the commission of the crime of attempted robbery or burglary which resulted in the death of a human being." At defendant's request, the jury was further instructed, "For you to find that defendant . . . acted with reckless indifference to human life you must be satisfied beyond a reasonable doubt that he actually subjectively appreciated the life threatening risk created by his conduct and acted with conscious disregard for human life."

---

[5] There is no additional information regarding defendant's testimony in this court's opinion in case No. H012250.

The jury found defendant guilty as charged.  The superior court sentenced defendant to life without the possibility of parole consecutive to four years for the firearm enhancement, imposing and staying sentences on the remaining counts.

### 2.  Direct Appeal

This court affirmed the judgment in 1995.  Among other issues, this court determined that the trial court had a sua sponte duty to instruct the jury that " 'reckless indifference to human life,' " as used in the felony-murder special circumstance statute, " 'requires that a defendant who is an aider and abettor, and not the actual killer, knowingly engage in criminal activities known to carry a *grave* risk of death,' " but that the court's instruction that "the aider and abettor had to personally appreciate that his actions constituted a threat to human life but nevertheless acted with conscious disregard for human life" did not prejudice defendant based on the evidence in the record.  (Italics added.)  This court also determined that defendant's sentence did not constitute cruel and/or unusual punishment because the record showed that defendant was " 'an active and major participant in the robbery' " and that "[i]t is both rational and fair to infer that [defendant] understood the significance of his role as he played it."

### 3.  Habeas Proceedings in the Superior Court and this Court

In March 2016, defendant filed a petition for writ of habeas corpus in the superior court contending that there was insufficient evidence to support the felony-murder special circumstance findings under *Banks*.  The superior court denied the petition, distinguishing *Banks* and determining that "*Banks* has no effect on [defendant's] case."  Implicitly concluding that there was sufficient evidence in the record that defendant was a major participant in the underlying felonies, the court found that defendant "scoped out the house, assisted in pushing in the front door with force to gain entry, and held another person at gunpoint inside the house when the victim was shot and killed down the hallway."  The court also stated that this court had "concluded [in the direct appeal] that [defendant] was an active and major participant in the robbery."

6

In addition, the superior court distinguished this case from *Banks* "as to the showing of 'reckless indifference.' " The court found that defendant "was at the scene of the robbery, used force in opening the door while the victims were attempting to bar entry, entered the home armed with a weapon, and used the weapon against one of the victims. [Defendant] unlike the [getaway] driver in *Banks* clearly knew deadly force was being used." The court also stated that this court determined in the direct appeal that the jury could find that defendant "had the requisite subjective awareness and understood the risk involved."

In May 2016, defendant filed a petition for writ of habeas corpus in this court contending that there was insufficient evidence to support the special circumstance findings under *Banks*. This court summarily denied the petition on June 3, 2016.

In April 2018, defendant filed a petition for writ of habeas corpus in the superior court contending that under the California Supreme Court's decision in *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*), his first degree murder conviction under the natural and probable consequences doctrine was invalid. The superior court issued an order to show cause "[b]ecause [although] the special circumstances verdicts demonstrate that the jury made the findings which would bring this case within the felony-murder rule," rendering any *Chiu* error harmless, such a determination "presupposes the validity of those special circumstances findings" under *Banks* and *Clark*. Approximately one month after issuing the order to show cause, the superior court denied the petition, stating that it had been unaware of the court's earlier determination of defendant's petition under *Banks*, which it found precluded its review of the same issue, and determining that any *Chiu* error was harmless.

In July 2018, defendant filed a petition for writ of habeas corpus in this court, raising the same claim under *Chiu*. This court summarily denied the petition.

### 4. Section 1170.95 Proceedings

In 2019, defendant filed a section 1170.95 petition in the superior court. The petition consisted of a three-page preprinted form, two pages of which were a declaration defendant signed under penalty of perjury. Among other boxes, defendant checked boxes on the form declaring that "[a] complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine"; "[a]t trial, [he] was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine"; and he "could not now be convicted of 1st or 2nd degree murder because of changes made to . . . § § 188 and 189, effective January 1, 2019." In addition, defendant checked boxes declaring that he "was not the actual killer"; he "did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree"; and he "was not a major participant in the felony **or** . . . did not act with reckless indifference to human life during the course of the crime or felony." Defendant requested counsel.

The superior court appointed counsel to represent defendant. The district attorney filed two oppositions to the petition, consisting of a constitutional challenge to section 1170.95 and an opposition to the petition's merits. On the petition's merits, the district attorney conceded that defendant was not Benitez's actual killer, but argued that defendant was ineligible for relief because the jury determined that defendant was a major participant who acted with reckless indifference to human life when it found the special circumstance allegations true, a finding that was not disturbed on appeal or in defendant's habeas cases. The district attorney also asserted that defendant's "bare bones declaration," "with no independent objective corroboration," was insufficient to establish a prima facie claim for relief; defendant was estopped from challenging the special circumstance findings; and defendant could be convicted of murder under current law.

8

Defendant replied to the district attorney's oppositions. On the petition's merits, defendant contended that he had met the prima facie requirements of section 1170.95 by filing a declaration stating eligibility for relief under subdivision (a)(3); he was not estopped from obtaining relief because the issues raised in his petition were not the same as those previously litigated; and he could not be convicted of murder under current law.

After another round of briefing by both parties, defendant filed a supplemental petition for resentencing. Defendant stated that he was convicted of first degree murder under the theory that he aided and abetted an attempted robbery and burglary and that the "only instructions for the murder charge as it related to [defendant] was aiding and abetting under the natural and probable consequence rule." Defendant asserted that the evidence did not show that he "committed any murder . . . , intended any murder . . . , or acted with reckless indifference to human life . . . , as would be required for aiding and abetting murder and for a conviction" under current law. Defendant stated that the jury did not find when determining his guilt of murder, as opposed to the special circumstance allegations, that he was a major participant in the attempted robbery or burglary and acted with reckless indifference to human life. Defendant asked the superior court to issue an order to show cause.

The superior court denied the petition, determining that it was not possible for defendant to show entitlement to relief because a jury found the felony-murder special circumstance allegations true beyond a reasonable doubt, the judgment was affirmed on appeal, and a detailed *Banks* analysis was performed in the habeas case. The court also found that Senate Bill 1437 was unconstitutional because it unlawfully amended Propositions 7 and 115.

### III.    DISCUSSION

**A.    *Senate Bill 1437's Statutory Framework and the Standard of Review***

The Legislature enacted Senate Bill 1437 to "amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not

9

imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant of the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The bill amended sections 188 and 189, which pertain to the definition of malice and the degrees of murder. (Stats. 2018, ch. 1015, §§ 2-3.)

The Legislature amended section 188 by adding subdivision (a)(3), which provides: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (Stats. 2018, ch. 1015, § 2; § 188, subd. (a)(3).) And section 189, subdivision (e), now limits liability for murder to a person who was either the actual killer or, though not the actual killer, acted "with intent to kill" and "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer" in the commission of first degree murder, or was "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (Stats. 2018, ch. 1015, § 3; § 189, subd. (e).)

In addition to the amendments to sections 188 and 189, Senate Bill 1437 added section 1170.95, which allows "[a] person convicted of felony murder or murder under the natural and probable consequences theory" to petition the sentencing court to vacate the murder conviction and be resentenced on any remaining counts. (Stats. 2018, ch. 1015, § 4; § 1170.95, subd. (a).) All of the following conditions must apply to warrant section 1170.95 relief: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[; and] [¶] (3) The petitioner could not be convicted of

first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

A section 1170.95 petition is required to include: "(A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [And] [¶] (C) [w]hether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1).) "[U]pon the filing of a facially sufficient petition," the statute "requir[es] that counsel be appointed." (*People v. Lewis* (2021) 11 Cal.5th 952, 970 (*Lewis*).) "[T]hen the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. (§ 1170.95, subd. (c).)" (*Id*. at p. 960 .)

"[T]he prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citations.]" (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

If the court finds that a prima facie showing has been made, it issues an order to show cause and holds a hearing "to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts." (§ 1170.95, subd. (d)(1).) The burden of proof at the hearing is on the prosecution "to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*Id.*, subd. (d)(3).) Both parties may rely on the record of conviction or present new or

11

additional evidence at the hearing. (*Ibid.*) Alternatively, "[t]he parties may waive a resentencing hearing and stipulate that the petitioner is eligible to have his or her murder conviction vacated and for resentencing. If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner." (*Id.*, subd. (d)(2).)

We determine questions of statutory interpretation de novo. (See *People v. Prunty* (2015) 62 Cal.4th 59, 71.) Whether the superior court properly denied defendant's section 1170.95 petition for failure to state a prima facie case for relief involves multiple standards of review. We review the court's factual findings for substantial evidence and the court's application of those facts to section 1170.95 de novo. (See *People v. Drayton* (2020) 47 Cal.App.5th 965, 981, overruled on another ground in *Lewis*, *supra*, 11 Cal.5th at pp. 962-970.)

**B.    *The Felony-Murder Special Circumstance Statute and Banks and Clark***

An individual convicted of first degree murder may be sentenced to death or life without the possibility of parole if a special circumstance enumerated under section 190.2 is found true. "One such special circumstance is the felony-murder special circumstance. The requirements of the felony-murder special circumstance mirror the post-Senate Bill 1437 requirements of felony murder. [Citations.] That is, the felony-murder special circumstance applies where (1) the murder occurred during the commission of a specified felony and (2) the defendant was the actual killer; with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted in the commission of the murder; or with reckless indifference to human life and as a major participant, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted in the commission of the felony. (§ 190.2, subds. (a)(17), (c), (d).)" (*Pineda*, *supra*, 66 Cal.App.5th at p. 798.)

In *Banks* and *Clark*, the California Supreme Court "clarified the meaning of the special circumstances statute." (*In re Scoggins* (2020) 9 Cal.5th 667, 671.) In *Banks*, the court considered "under what circumstances an accomplice who lacks the intent to kill may qualify as a major participant" under section 190.2. (*Banks*, *supra*, 61 Cal.4th at p. 794.) The court held that "a defendant's personal involvement must be substantial, greater than the actions of an ordinary aider and abettor to an ordinary felony murder," and identified five factors relevant to that determination. (*Id.* at pp. 802, 803.) The factors are: (1) "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?"; (2) "What role did the defendant have in supplying or using lethal weapons?"; (3) "What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?"; (4) "Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?"; and (5) "What did the defendant do after lethal force was used?" (*Id.* at p. 803, fn. omitted.) "No one of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major' [citation]." (*Ibid.*) The court also stated that section 190.2's requirement that an accomplice act with reckless indifference to human life mandates that " 'the defendant be "*subjectively* aware that his or her participation in the felony involved a grave risk of death," ' " and that "[a]wareness of no more than the foreseeable risk of death inherent in any armed crime is insufficient." (*Banks*, *supra*, at pp. 807, 808.)

In *Clark*, the California Supreme Court held that reckless indifference to human life has "both subjective and objective elements." (*Clark*, *supra*, 63 Cal.4th at p. 617.) "The subjective element is the defendant's conscious disregard of [the grave] risks [of death] known to him or her." (*Ibid.*) As to the objective element, " '[t]he risk [of death]

13

must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.' " (*Ibid.*) The court identified five factors relevant to whether the defendant acted with reckless indifference to human life under the totality of the circumstances. (*Id.* at p. 618.) Those factors are: (1) the defendant's knowledge of weapons, the number of weapons, and whether the defendant used a weapon; (2) the defendant's physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) the duration of the underlying felony; (4) the defendant's knowledge of his or her cohort's likelihood of killing; and (5) the defendant's efforts to minimize the risks of violence during the underlying felony. (*Id.* at pp. 618-622.) "Just as [the court] said of the factors concerning major participant status in *Banks*, '[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient.' " (*Id.* at p. 618.)

"A defendant with a pre-*Banks* and *Clark* felony-murder special-circumstance finding whose conviction became final prior to *Banks* and *Clark* may file a petition for habeas corpus seeking to have the finding invalidated. Such a defendant 'is entitled to habeas corpus relief " 'if there is no material dispute as to the facts relating to his conviction' " ' and 'the special circumstances statute as construed in *Banks* and *Clark*' did not prohibit his conduct." (*Pineda*, *supra*, 66 Cal.App.5th at p. 799.)

### C.     *Defendant Is Entitled to a Judicial Determination of Whether There is Sufficient Evidence of Reckless Indifference under Clark*

As we stated above, we recently held in *Pineda* that " 'where a petitioner facing a felony-murder special-circumstance finding has never been afforded a *Banks* and *Clark* sufficiency-of-the-evidence review—by any court, at the trial or appellate level— section 1170.95 courts have an obligation to undertake such an analysis at the prima facie entitlement-to-relief stage of a resentencing proceeding under subdivision (c) of the . . .

14

statute.' " (*Pineda*, *supra*, 66 Cal.App.5th at p. 801.) In reaching our holding in *Pineda*, we followed the First District's reasoning in *Secrease* and adopted its approach. (*Pineda*, *supra*, at pp. 801-802.) *Pineda* and *Secrease* are dispositive here.

Defendant received a *Banks* sufficiency-of-the-evidence review in the superior court when he filed his 2016 habeas petition contending that the evidence was insufficient to support the special circumstance findings under *Banks*. The superior court determined that this case was distinguishable from *Banks* and implicitly concluded that there was sufficient evidence in the record to support the jury's finding that defendant was a major participant in the underlying felonies based on the evidence that he "scoped out the house, assisted in pushing in the front door with force to gain entry, and held another person at gunpoint inside the house when the victim was shot and killed down the hallway."

However, defendant has not been afforded a review under *Clark* regarding the sufficiency of the evidence supporting the jury's finding that he acted with reckless indifference to human life. Although the superior court in the 2016 habeas proceedings considered whether there was sufficient evidence that defendant acted with reckless indifference, it did so without the benefit of *Clark*, which was decided two months after the superior denied defendant's petition. Thus, the court did not analyze whether there was sufficient evidence to support the objective element of reckless indifference, namely, whether " '[t]he risk [of death] [was] of such a nature and degree that, considering the nature and purpose of [defendant's] conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in [defendant's] situation.' " (*Clark*, *supra*, 63 Cal.4th at p. 617.) Nor did the superior court have the benefit of *Clark*'s discussion regarding the five factors that may be considered in the sufficiency-of-the-evidence determination of reckless indifference. (See *id.* at pp. 618-622.)

This court, too, has never made a post-*Clark* determination of whether there is sufficient evidence in the record that defendant acted with reckless indifference to human life. This court determined on direct appeal that the instructional error involving the definition of reckless indifference, which omitted that the jury must find that defendant was aware that his participation in the underlying felonies involved a *grave risk* of death, was harmless based on the evidence in the record.[6] But regardless of whether a decision that an instructional error was harmless can be determinative of evidentiary sufficiency, this court's determination was made more than a decade before the California Supreme Court clarified section 190.2's meaning of reckless indifference to human life in *Clark*. And, because this court summarily denied defendant's habeas petition under *Banks* on June 3, 2016, that decision does not constitute a merits determination and was also pre-*Clark*.

Thus, no court has reviewed the jury's felony-murder special circumstance findings under *Clark*. Defendant is therefore entitled to such a review at the prima facie stage of the section 1170.95 proceedings. (See *Pineda*, *supra*, 66 Cal.App.5th at p. 795 [pre-*Banks* and *Clark* murder defendant petitioning for section 1170.95 resentencing relief "is entitled to a judicial determination as to whether his conduct is proscribed by the special circumstances statute, as construed in *Banks* and *Clark*"].) Although *Pineda* and *Secrease* suggest that this sufficiency-of-the-evidence determination can be made on appeal with an adequate appellate record, "[r]emand will afford the parties the opportunity to fully develop their positions on this potentially dispositive issue with the

---

[6] As stated above, the jury was instructed that to find the special circumstance allegations true, it had to find that defendant "actually subjectively appreciated the life threatening risk created by his conduct and acted with conscious disregard for human life." The jury was not instructed that it had to find that defendant knowingly engaged in criminal activity that he knew involved a *grave risk* of death. (See *Clark*, *supra*, 63 Cal.4th at p. 616.)

16

full benefit of the guidance set forth here and in [*Pineda* and] *Secrease*." (*Pineda*, *supra*, at p. 802.)

Accordingly, we remand the matter to the superior court to determine based on the California Supreme Court's guidance in *Clark* whether there is sufficient evidence in the record to support the jury's felony-murder special circumstance findings that defendant acted with reckless indifference to human life. Thus, " 'we are remanding the case for resumption of proceedings at the section 1170.95, subdivision (c) entitlement-to-relief stage of the process, where the court's task will be narrowly focused on whether, without resolving conflicts in the evidence and making findings, the evidence presented at trial was sufficient to support the felony-murder special-circumstance finding[s] under . . . *Clark*. If the answer to that is yes, the section 190.2, subdivision (d) finding[s] made against [defendant] foreclose[] him from further litigating that issue, thus rendering him ineligible for resentencing relief as a matter of law. If the answer is no, an order to show cause must issue and an evidentiary hearing must be held under section 1170.95, subdivision (d)(3).' " (*Pineda*, *supra*, 66 Cal.App.5th at pp. 801-802.)

## IV.   DISPOSITION

The superior court's order denying defendant's Penal Code section 1170.95 petition is reversed. The matter is remanded to the superior court for a determination of whether the evidence presented at trial was sufficient under *People v. Clark* (2016) 63 Cal.4th 522, 614-632 to support the felony-murder special circumstance findings that defendant acted with reckless indifference to human life. If the answer to that is yes, the Penal Code section 190.2, subdivision (d) findings render defendant ineligible for resentencing relief as a matter of law. If the answer is no, an order to show cause shall issue and an evidentiary hearing shall be held under Penal Code section 1170.95, subdivision (d)(3).

17

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

DANNER, J.

*People v. Mendoza*
**H047430**